**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Zuniga,<br>Plaintiff,<br>v.<br>County of Pima, et al.,<br>Defendants. | No. CV-24-00263-TUC-JGZ (MAA)<br>**ORDER** |

On April 15, 2026, Magistrate Judge Michael A. Ambri issued a Report and Recommendation ("R&R") (Doc. 86), recommending that the Court grant in part and deny in part Defendants' Motion for Summary Judgment (Doc. 74). Plaintiff and Defendants both filed Objections to the R&R. (Docs. 87, 88.) Defendants responded to Plaintiff's Objection, and Plaintiff responded to Defendants' Objection. (Docs. 89, 90.) Having reviewed the record, the R&R, and the parties' objections and responses, the Court will adopt in part and reject in part the R&R.

## I. R&R STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The party seeking de novo review must provide "specific written objections to the proposed findings and

recommendations" of the magistrate judge. Fed. R. Civ. P. 72(b)(2).

## II. FACTUAL BACKGROUND

Neither party objects to the R&R's summary of the background and procedural history, and the Court adopts that summary. (Doc. 86 at 1–2.) The Court discusses the facts where necessary to address the parties' specific objections.

## III. DISCUSSION

Defendants seek summary judgment on all five counts of Plaintiff's FAC. (Doc. 74.) Magistrate Judge Ambri recommends granting summary judgment on Count I, national origin discrimination (Title VII); Count II, retaliation (Title VII); Count III, hostile work environment (Title VII); Count IV(a), municipal liability alleging an Equal Protection violation (42 U.S.C.§ 1983); Count IV(b), national origin discrimination under the Equal Protection Clause (42 U.S.C.§ 1983); and Count V, interference and retaliation in violation of the Family and Medical Leave Act. (Doc. 86 at 13.) Judge Ambri recommends denying summary judgment on Count IV(a), municipal liability alleging First Amendment or Due Process violations (42 U.S.C.§ 1983); Count IV(c), First Amendment retaliation (42 U.S.C.§ 1983); and Count IV(d), deprivation of a property interest without due process (42 U.S.C.§ 1983). (*Id.*)

Counts I through III are asserted against Sheriff Chris Nanos in his official capacity and allege, respectively, national origin discrimination, retaliation, and hostile work environment under Title VII. Count IV is asserted under § 1983 against Pima County under *Monell* and against Sheriff Chris Nanos, Chief Scott Lowing, Captain Robert Koumal, and Captain Elsa Navarro in their individual capacities. Count IV(a) alleges municipal liability based on the County's alleged policy or practice of referring employee complaints back to the Sheriff's Department for self investigation; Count IV(b) alleges national origin discrimination in violation of the Equal Protection Clause; Count IV(c) alleges retaliation in violation of the First Amendment; and Count IV(d) alleges deprivation of a protected property interest without due process in violation of the Fourteenth Amendment. Count V alleges interference and retaliation under the FMLA against Pima County based principally

on actions taken through Captain Navarro.

Neither party objects to the recommendation that summary judgment be granted on Counts II and III. The Court therefore will adopt the R&R's recommendation. *See Reyna-Tapia*, 328 F.3d at 1121.

Plaintiff objects to the recommendation that summary judgment be granted on Count I, Count IV(a) to the extent that claim concerns Equal Protection, Count IV(b), and Count V. (Doc. 87.) Defendants object to the R&R's recommendation that summary judgment be denied on Count IV(a) to the extent that claim concerns the First Amendment and Due Process violations, Count IV(c), and Count IV(d). (Doc. 88.) The Court addresses the parties' objections in turn.

**A. Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant demonstrates the absence of a genuine dispute, the nonmovant must present specific evidence establishing a genuine issue for trial. *Celotex*, 477 U.S. at 323. A dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

At summary judgment, the Court does not weigh the evidence but determines whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249. The Court must view the evidence and draw all reasonable inferences in the nonmovant's favor. *Id.* at 255.

**B. Discrimination Based on National Origin (Title VII) – Count I**

The R&R recommends granting summary judgment on Count I because Plaintiff failed to establish that similarly situated non-Hispanic employees were treated more favorably or show that Defendants' stated reason for his reassignment was pretextual. (Doc. 86 at 3–7.) Plaintiff objects that the R&R improperly discounted his comparator evidence and failed to consider whether Defendants' stated reason was pretextual. (Doc.

87 at 3–5.)

The Court agrees with the R&R. Plaintiff primarily relies on his affidavit, in which he states that Seargeant Jeremy Kreibich, a non-Hispanic employee, "engaged in the same conduct" as Plaintiff but was reassigned within his rank and retained supervisory authority, while Plaintiff was stripped of supervisory authority and reassigned to a non-supervisory role. (Doc. 77-1 at 4 ¶12; Doc. 87 at 3.) But Plaintiff's assertion that the two employees "engaged in the same conduct," without additional facts concerning Kreibich's conduct, employment circumstances, disciplinary history, or the circumstances surrounding his reassignment, is insufficient to permit a reasonable jury to find that Kreibich was similarly situated in all material respects. Plaintiff's affidavit also identifies other employees whom he contends received more favorable assignments, but it does not provide sufficient facts showing that those employees were similarly situated to Plaintiff.

Nor does the remaining evidence create a genuine dispute as to pretext. The record contains evidence that command staff disliked Plaintiff's public criticism and sought to remove him from a supervisory role. While that evidence may support an inference that Plaintiff's reassignment was motivated by his speech, it does not, without more, support an inference that Defendants reassigned him because of his national origin. Plaintiff therefore has not produced sufficient evidence from which a reasonable jury could conclude that Defendants' stated reason for the reassignment was a pretext for national origin discrimination.

The Court therefore overrules Plaintiff's objection and will adopt the R&R's recommendation as to Count I.

### C. Section 1983 Claims

Count IV asserts four claims under § 1983: (1) a *Monell* claim against Pima County based on its alleged policy of referring employee complaints to the Sheriff's Department for self investigation (Count IV(a)); (2) national origin discrimination in violation of the Equal Protection Clause (Count IV(b)); (3) retaliation in violation of the First Amendment, (Count IV(c)); and (4) deprivation of a protected property interest without due process,

(Count IV(d)). (Doc. 49 ¶¶ 114–20.)

**1. <u>Equal Protection – Count IV(b)</u>**

The R&R recommends granting summary judgment on Count IV(b) because Plaintiff failed to present sufficient evidence of national origin discrimination. (Doc. 86 at 10–11.) Plaintiff objects that his comparator evidence and the circumstances surrounding his reassignment permit an inference of discriminatory intent. (Doc. 87 at 3–5.)

The Court agrees with the R&R. For the same reasons discussed with respect to Count I, Plaintiff has not raised a triable issue that similarly situated non-Hispanic employees were treated more favorably or otherwise connected his reassignment to his national origin. The Court therefore overrules Plaintiff's objection and adopts the R&R's recommendation as to Count IV(b).

**2. <u>Procedural Due Process – Count IV(d)</u>**

Defendants object to the R&R's conclusion that they are not entitled to summary judgment on Count IV(d), arguing that Plaintiff has not identified a protected property interest of which he was deprived. (Doc. 88 at 6.) The Court agrees with Defendants.

To establish a procedural due process claim, Plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). Property interests "are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The FAC identifies Plaintiff's asserted property interest as his interest in continued employment. (Doc. 49 ¶ 119.) Plaintiff, however, remained employed as a Corrections Lieutenant, and his reassignment did not reduce his pay or change his rank or title. (Docs. 49 ¶ 2; 76 at 4; 86 at 2.)

Plaintiff responds that the reassignment substantially reduced or eliminated his supervisory authority. (Doc. 90 at 9–10.) Even if the reassignment materially altered Plaintiff's duties, he must identify an independent source giving him a legitimate entitlement to retain those duties. *See Stiesberg v. California*, 80 F.3d 353, 356–57 (9th

Cir. 1996).

Plaintiff has not identified an Arizona statute, employment contract, or mandatory County rule guaranteeing him a particular assignment, span of control, or set of supervisory duties. Pima County Merit Rule 12.1 does not create such an entitlement. Its statement that progressive discipline "should be used whenever possible" is discretionary and does not substantively restrict the Sheriff's authority to alter an employee's duties.

The nonbinding nature of the County's administrative findings does not relieve Plaintiff of his threshold burden to identify a protected property interest. Because he has not done so, the Court sustains Defendants' objection, rejects the R&R's recommendation as to Count IV(d), and will grant Defendants summary judgment on that claim.

**3. First Amendment Retaliation – Count IV(c)**

Defendants object to the R&R's conclusion that they are not entitled to summary judgment on Count IV(c), arguing that no First Amendment retaliation occurred and that the individual Defendants are protected by qualified immunity. (Doc. 88 at 5–6.)

A public employee asserting First Amendment retaliation must show that: (1) he spoke on a matter of public concern; (2) he spoke as a private citizen rather than pursuant to his official duties; and (3) his speech was a substantial or motivating factor in an adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1070–71 (9th Cir. 2009). If the employee makes that showing, the employer may avoid liability by demonstrating that it had an adequate justification for treating the employee differently from other members of the public or that it would have taken the same action absent the protected speech. *Id.* at 1071–72; *see also Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018). An employment action is adverse if it is reasonably likely to deter an employee from engaging in protected speech. *Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003).

Plaintiff alleges that he publicly disputed Sheriff Nanos's statements to the Board of Supervisors concerning an inmate's death and disclosed alleged medical failures at the jail through social media and to news reporters. (Doc. 49 ¶ 12.) Defendants do not meaningfully dispute that Plaintiff spoke as a private citizen on matters of public concern.

The record contains evidence from which a reasonable jury could connect Plaintiff's speech to his reassignment. Plaintiff testified that the reassignment caused him to lose supervisory authority and perform officer level duties. (Doc. 75-1 at 11, Zuniga Dep. 36:3–37:14.) Kastigar testified that the reassignment was intended to remove Plaintiff from his supervisory capacity and reduce his span of control. He further testified that command staff "didn't like what [Plaintiff] was saying" and "were mad at him for continually berating the organization." (Doc. 77-1 at 15, Kastigar Dep. 55:24–56:8.)

Nanos testified that he made the reassignment decision. (Doc. 77-1 at 44, Nanos Dep. 22:11–14.) He acknowledged Plaintiff's right to speak publicly but explained that, if Plaintiff's statements disrupted morale, Nanos could determine where Plaintiff should work so the organization could operate without the disruption. (Doc. 77-1 at 46, Nanos Dep. 29:3–10.) Lowing similarly testified that the duration of the reassignment depended on whether Plaintiff demonstrated that he could be supportive and act as a team player and that Plaintiff's decision to speak to the media "definitely created conflict." (Doc. 77-1 at 28, Lowing Dep. 17:9–24.)

Viewed in Plaintiff's favor, this evidence would permit a reasonable jury to find that Plaintiff's protected speech was a substantial or motivating factor in his reassignment. Defendants maintain that Plaintiff was reassigned because he had lost the trust and support of his subordinates and created a toxic work environment. (Docs. 78 at 5–6; 75-1 at 27, 30–35.) That explanation may ultimately persuade a jury that Defendants would have reassigned Plaintiff regardless of his protected speech, but the Court may not weigh that explanation against the evidence of retaliatory motive. *See Anderson*, 477 U.S. at 249.

Defendants also challenge Kastigar's firsthand knowledge of the final reassignment decision. (Doc. 78 at 4–5). Kastigar testified, however, about briefings he received from command staff concerning the reassignment. (Doc. 77-1 at 15, Kastigar Dep. 55:16–56:10.) Defendants' challenge to the extent of Kastigar's knowledge concerns the weight of his testimony and does not eliminate the factual dispute created by the remaining evidence.

The Court therefore agrees with the R&R, overrules Defendants' objection, and will

deny summary judgment as to Count IV(c).

**a. Qualified Immunity**

The R&R recommends denying summary judgment on Plaintiff's First Amendment claim despite Defendants' assertion of qualified immunity. (Doc. 86 at 10–11.) Defendants object that no clearly established law prohibited them from investigating Plaintiff's complaints or reassigning him. (Doc. 88 at 5–6.)

Qualified immunity protects government officials from civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted).

Plaintiff does not claim, as Defendants suggest, that Defendants lacked authority to investigate complaints or reassign employees. (Doc. 88 at 5–6.) Rather, he claims that Defendants reassigned him and materially reduced his responsibilities because of his protected speech. (Docs. 49 ¶¶ 55, 118; 77-1 at 3 ¶¶ 4–9.)

At the time of the reassignment, it was clearly established that a public employer could not take an adverse employment action in retaliation for an employee's speech as a private citizen on a matter of public concern without an adequate governmental justification. *See Eng v. Cooley*, 552 F.3d 1062, 1070–71 (9th Cir. 2009); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068–69 (9th Cir. 2012). It was also clearly established that an unfavorable reassignment or material reduction in responsibilities could constitute an adverse action even without termination or reduced compensation. *See Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003).

As discussed above, a reasonable jury could find that Defendants materially reduced Plaintiff's responsibilities because he publicly criticized the Sheriff's Department. The Court may not resolve that factual dispute in Defendants' favor when deciding qualified

immunity. *See,* e.g., *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate"); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003).

The Court therefore overrules Defendants' objection and concludes that Sheriff Nanos, Chief Lowing, Captain Koumal, and Captain Navarro are not entitled to qualified immunity on Count IV(c) at this stage. Because Plaintiff has not established an Equal Protection or Due Process violation, the Court need not address qualified immunity as to Counts IV(b) and IV(d).

**4. <u>Municipal Liability – Count IV(a)</u>**

The R&R recommends granting summary judgment on Count IV(a) to the extent it rests on an Equal Protection violation but denying summary judgment to the extent it rests on the alleged First Amendment and Due Process violations. The R&R concludes that a factual dispute exists concerning whether the County referred complaints against the Sheriff or command staff back to the Sheriff's Department for investigation. (Doc. 86 at 9–10.) Defendants object that Plaintiff has not established a County policy or custom or shown that the manner in which his complaints were investigated caused a constitutional violation. (Doc. 88 at 2–5.) The Court agrees.

A municipality is liable under § 1983 only where the plaintiff's injury was caused by an expressly adopted official policy, a longstanding practice or custom, or the decision of a final policymaker. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). There is no municipal liability absent an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because Plaintiff has not raised a triable issue on his Equal Protection or Due Process claims, his *Monell* claim fails to the extent it rests on those theories. The Court therefore addresses only whether the alleged County practices support municipal liability for the First Amendment retaliation claim in Count IV(c).

Plaintiff argues that Pima County maintained a practice of referring employee complaints back to the Sheriff's Department for investigation, even when those complaints

named the Sheriff or command staff. (Doc. 76 at 14–15.) A municipal policy or custom supports liability only where it is the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). That standard requires both cause in fact and proximate cause. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Plaintiff has not made that showing. The alleged First Amendment violation is Plaintiff's December 2021 reassignment, which allegedly occurred within hours of his December 21, 2021 complaint to Human Resources. (Doc. 49 ¶¶ 13–14, 118.) Human Resources did not refer that complaint to the Sheriff's Department until February 18, 2022—approximately two months after the reassignment. (Doc. 77-1 at 8.) Accordingly, even assuming the referral practice existed and the resulting investigation was inadequate, the practice was neither the cause in fact nor the proximate cause of Plaintiff's reassignment.[1]

**a. Nanos's reassignment decision does not establish municipal liability**.

In response to Defendants' objections, Plaintiff argues for the first time that Sheriff Nanos's reassignment decision independently establishes County liability because Nanos was a final policymaker. (Doc. 90 at 5–6.) Plaintiff did not present this theory to the Magistrate Judge, who therefore did not address it in the R&R. Although the Court has discretion to consider an argument raised for the first time during R&R objections, it is not required to do so. *Brown v. Roe*, 279 F.3d 742, 744–46 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). Plaintiff offers no reason for failing to raise the theory in his summary judgment briefing. The Court therefore declines to consider it.[2]

[1] For the same reason, a factual dispute about which complaints the Sheriff's Department investigated and which Human Resources handled is also not material.

[2] Even if the Court considered the argument, it would fail on the merits. Municipal liability based on a single decision requires proof that the decisionmaker possessed final policymaking authority concerning the action at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986). An official's discretion to make a final personnel decision does not, without more, establish authority to formulate municipal employment policy. *Id.* at 481–82 & n.12; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988). Plaintiff relies on evidence that Nanos personally made the reassignment decision and possessed authority over PCSD operations and personnel assignments. (Doc. 90 at 5–6.) That

**b. Plaintiff has not established ratification.**

Plaintiff also argues that County Administrator Jan Lesher and Human Resources Director Cathy Bohland ratified the retaliatory acts by directing that investigations remain within the Sheriff's Department, declining to reverse facially defective findings, and ignoring his objections. (Doc. 76 at 15.) He cited no record evidence in support of these assertions, (*see* Doc. 76), and he did not renew this theory in response to Defendants' Objection to the R&R. (*See* Doc. 90 at 3–6.)

Ratification requires proof that an official with "final policy-making authority" approve both the challenged decision and its unconstitutional basis. *Gillette v. Delmore*, 979 F.2d 1342, 1346–48 (9th Cir. 1992); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Plaintiff identifies no evidence that Lesher or Bohland possessed final policymaking authority over his reassignment, knew that it was motivated by his protected speech, or affirmatively approved that retaliatory basis. Their alleged failure to reverse the reassignment does not establish approval of the decision and its allegedly unconstitutional basis, and their failure to investigate the basis for the reassignment does not establish a delegation of policymaking authority. *See Christie*, 176 F.3d at 1239; *Praprotnik*, 485 U.S. at 127, 130.

The Court therefore will sustain Defendants' objection, reject the R&R's recommendation in part, and grant Pima County summary judgment on Count IV(a). Plaintiff's First Amendment retaliation claim in Count IV(c) remains pending against the individual Defendants.

**D. FMLA – Count V**

The R&R recommends granting summary judgment on Count V because the addition of eight hours of sick leave to Plaintiff's timecard was corrected before the timecard was finalized and Plaintiff failed to show that he lost an FMLA benefit or that his

---

evidence establishes Nanos's decisionmaking authority, but it does not establish that he possessed final policymaking authority for Pima County over the employment policy at issue. Accordingly, Plaintiff has not established municipal liability based on Nanos's decision.

protected leave was a negative factor in the Letter of Counseling or any other disciplinary decision. (Doc. 86 at 12–13.) Plaintiff objects that his time records were altered during his protected leave and that leave-related matters were later used to discipline him. (Doc. 87 at 5–6.)

The Court agrees with the R&R that Plaintiff failed to present evidence that Defendants interfered with his FMLA rights. Plaintiff has not shown that the timecard entry caused him prejudice or that his protected leave was a negative factor in any disciplinary decision. The Court will therefore overrule Plaintiff's objection and adopt the R&R's recommendation as to Count V.

## IV. CONCLUSION

The evidence, viewed in Plaintiff's favor, would permit a reasonable jury to find that the individual Defendants reassigned Plaintiff because of his protected speech. Genuine disputes concerning Defendants' motives also preclude qualified immunity at this stage. Plaintiff has not, however, established a triable claim under Title VII, the Equal Protection or Due Process Clauses, or the FMLA, or a basis for municipal liability under § 1983. Accordingly, only Plaintiff's First Amendment retaliation claim against the individual Defendants in Count IV(c) remains pending.

Accordingly,

**IT IS ORDERED THAT:**

1. Plaintiff's Objection to the R&R (Doc. 87) is **overruled**.
2. Defendants' Objection to the R&R (Doc. 88) is **sustained in part and overruled in part**.
3. The R&R (Doc. 86) is **adopted in part and rejected in part**, as set forth in this Order.
4. Defendants' Motion for Summary Judgment (Doc. 74) is **granted** as to Counts I, II, III, IV(a), IV(b), IV(d), and V, and as to Count IV(c) against Pima County.
5. Defendants' Motion for Summary Judgment (Doc. 74) is **denied** as to Count IV(c) against the individual Defendants, including on qualified immunity

grounds.

6. Counsel must file a Joint Proposed Pretrial Order within **thirty (30) days** of the date this Order is filed. The Joint Proposed Pretrial Order shall include, but not be limited to, that prescribed in the form found on the Courts' website, under the tabs: Judges Information/Judges' Orders, Forms & Procedures for Judge Zipps: https://www.azd.uscourts.gov/judge-orders/zipps-jennifer-g.

Dated this 9th day of September, 2026.

Jennifer G. Zipps
Chief United States District Judge